RECEIVED
APR 17 2019
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| DEVY FOSTER, et al | DOCKET NO.: 1:17-cv-656 |
| VERSUS | JUDGE DEE D. DRELL |
| WAL-MART LOUISIANA, LLC | MAG. JUDGE PEREZ-MONTES |

## MEMORANDUM RULING

Before the Court is a motion for partial summary judgment (Doc. 46) filed by Defendant Wal-Mart Louisiana, LLC ("Walmart"), an opposition (Doc. 48) filed by Plaintiff Devy Foster, and a reply (Doc. 49) filed by Walmart. For the following reasons, the Court finds that Walmart's motion should be **DENIED**.

### I. FACTS & PROCEDURAL HISTORY

The instant motion seeks summary judgment that Mrs. Foster is unable to sustain the burden of proof required to show that the cervical surgery she underwent on September 4, 2018, was necessitated by a slip and fall in a Walmart store on August 12, 2016.[1]

In April 2012, Dr. Gregory Dowd performed a C3-6 anterior cervical discectomy on Mrs. Foster.[2] She followed up with Dr. Dowd post-surgery through 2013.[3] Several years later, on July 6, 2016, Mrs. Foster presented to Dr. Dowd with neck pain radiating to her left shoulder that she stated had persisted for approximately six months.[4] Dr. Dowd testified that this new injury appeared to be unrelated to her prior surgery.[5]

---

[1] She seeks a variety of damages beyond her medical bills for the cervical surgery, and Charles Foster, her husband, seeks damages for loss of consortium and society. Pet. for Damages (Doc. 2) at ¶¶ 5-7.
[2] Statement of Material Facts (Doc. 46-1) at ¶ 1.
[3] Id. at ¶ 2
[4] Id. at ¶ 3.
[5] Dep. of Dr. Gregory Dowd (Doc. 46-4) at 14.

On August 12, 2016, Mrs. Foster allegedly slipped and fell in a puddle of water at a Wal-Mart Supercenter in Alexandria, Louisiana ("Walmart store").[6] Mrs. Foster asserts that this accident caused her to suffer "injuries to lumbar spine, left knee, and right shoulder, among other injuries."[7] Shortly after the Walmart store incident, Mrs. Foster went to the Cabrini Hospital ER for treatment, but she made no mention of any neck pain.[8] One week later she saw her primary physician, Dr. Garcia, although again she did not complain of neck pain.[9]

On October 12, 2016, Mrs. Foster had a follow-up appointment with Dr. Dowd for her neck pain and described the incident at the Walmart store.[10] She complained of neck pain and mild tingling down the right arm to the forearm.[11] A January 3, 2017, MRI showed a disc bulge at C6-7 (the level immediately below her prior surgery).[12] Dr. Dowd testified that it could not be determined when Mrs. Foster developed this disc bulge.[13]

Several months later, on March 18, 2017, Mrs. Foster was involved in a head-on collision ("the collision") in which her vehicle was totaled.[14] On April 26, 2017, Mrs. Foster related to Dr. Dowd that she suffered an "[i]mmediate onset of neck pain" after the collision.[15] She also stated that she had a new "burning type pain down her right arm to hand," and she further complained of a limited range of cervical motion.[16]

---

[6] Pet. for Damages (Doc. 2) at ¶ 2.
[7] Id. at ¶ 4.
[8] Statement of Material Facts (Doc. 46-1) at ¶ 4.
[9] Id.
[10] Id. at ¶ 5.
[11] Id. at ¶ 6.
[12] Id. at ¶ 7.
[13] Id. at ¶ 8.
[14] Id. at ¶ 9.
[15] Id. at ¶ 10.
[16] Id. at ¶¶ 11-12.

2

Dr. Dowd performed cervical surgery on September 4, 2018, because of the persistence of Mrs. Foster's neck pain.[17] According to Dr. Dowd, the underlying reason for the surgery was the disc bulge at C6-7.[18] During his deposition, Dr. Dowd was unable to state that, more likely than not, the Walmart store incident caused this disc problem.[19]

Plaintiffs Devy Foster and Charles Foster, her husband, filed suit in Alexandria City Court, Rapides Parish, Louisiana, on October 3, 2016.[20] The case was removed on May 18, 2017, pursuant to the Court's diversity jurisdiction.[21] The instant motion was filed on February 8, 2019.[22] An opposition was filed on March 1, 2019,[23] and a reply was filed on March 8, 2019.[24]

## II.   LAW & ANALYSIS

A. STANDARD OF REVIEW

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider "all evidence in the light most favorable to the party resisting the motion." Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 675, 680 (5th Cir. 2011) (internal quotations omitted). It is important to note that the standard for summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, and (2) the movant is entitled to judgment as a matter of law.

---

[17] Id. at ¶ 16.
[18] Id. at ¶ 17.
[19] Id.
[20] Pet. for Damages (Doc. 2).
[21] Notice of Removal and Jury Demand (Doc. 1).
[22] Mot. for Partial Summ. J. (Doc. 46).
[23] Opp'n (Doc. 48).
[24] Reply (Doc. 49).

3

The movant has the burden of pointing to evidence proving there is no genuine dispute as to any material fact, or the absence of evidence supporting the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The burden shifts to the nonmoving party to come forward with evidence which demonstrates the essential elements of his claim. See Anderson, 477 U.S. at 250. The nonmoving party must establish the existence of a genuine dispute of material fact for trial by showing the evidence, when viewed in the light most favorable to him, is sufficient to enable a reasonable jury to render a verdict in his favor. Celotex, 477 U.S. at 325; Duffy v. Leading Edge Prods., Inc., 44 F.3d 308, 312 (5th Cir. 1995). A party whose claims are challenged by a motion for summary judgment may not rest on the allegations of the complaint and must articulate specific factual allegations which meet his burden of proof. Duffy, 44 F.2d at 312. "[C]onclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." Id. (citing Anderson, 477 U.S. at 247).

B. CAUSATION

"Federal courts apply state substantive law in diversity jurisdiction cases, but apply federal procedural law." DP Sols., Inc. v. Rollins, Inc., 353 F.3d 421, 427 (5th Cir. 2003) (citation omitted). Under Louisiana law, "[t]he test for determining the causal relationship between the accident and a subsequent injury is whether the plaintiff provided sufficient proof that more probably than not, the accident caused the subsequent injuries." Urquhart v. Spencer, 2017-0069 (La. App. 4 Cir. 7/27/17), 224 So.3d 1022, 1031 (citation omitted). "The mere possibility of a causal connection is insufficient to support any recovery." Bacon v. Ace Am. Ins. Co., No. CIV. A. 07-615-C, 2008 WL 5377998, at *4 (M.D. La. Dec. 23, 2008) (citations omitted). "Louisiana jurisprudence, however, is well-settled that a defendant 'takes his victim as he finds him' and is

4

responsible for all natural and probable consequences of his negligent conduct." Urquhart, 224 So.3d at 1031 (citation omitted).

In essence, Walmart argues that it is entitled to partial summary judgment because Dr. Dowd did not testify in his deposition that Mrs. Foster's need for neck surgery was, more likely than not, caused by the Walmart store incident. When asked to opine whether the Walmart store incident, more probably than not, caused the need for the cervical surgery, Dr. Dowd gave the following responses:

> Well, I think it's a difficult question. I don't know that there's an exact answer to these things.
>
> …
>
> Oh, I think it's a difficult question. I mean, and I don't think there is an exact answer.
>
> …
>
> And her pain ultimately persisted, despite a full course of treatment necessitating the need for surgery. I mean, that -- that's what I'm trying to say. As to how much of that was going to progress with or without the auto accident, I mean, I don't know. I mean, I guess I can't tell you.[25]

The plaintiff is required to carry the burden of proving causation. Nonetheless, the inability to provide a medical expert who will explicitly testify that an accident, more likely than not, caused the need for surgery is not necessarily fatal. To the contrary, courts typically engage in a detailed factual analysis when determining whether to issue summary judgment on the basis of insufficient evidence of medical causation.

In Bacon, the court found that a plaintiff who was involved in an automobile accident could not recover damages for a knee replacement surgery. 2008 WL 5377998, at *4. The court explained that the plaintiff's doctor would not testify that the accident "more probably than not" caused the

---

[25] Dep. of Dr. Gregory Dowd (Doc. 46-4) at 53, 55, 57.

need for surgery, and instead only testified such a causal connection was "possible" and that any opinion as to the probability would be speculative. Id. However, the Bacon court only reached its holding after discussing the plaintiff's medical history and noting that:

> [i]n this case, where [the doctor] could only state that there is a possibility that the accident caused [the plaintiff] to have to undergo her March 2007 knee replacement surgery **and where the evidence indicates that such surgery was warranted prior to the accident, if only the plaintiff had elected to go forward with it at that time**, the Court cannot find, based upon the substance of the medical evidence, that plaintiff has proven, more probably than not, that her knee replacement surgery is attributable to the accident at issue.

Id. at n.6 (emphasis added).

Similarly, in Ford v. Dolgencorp, LLC, the court found that the plaintiff could not carry her burden of showing that a fall in Dollar General store caused her to undergo left shoulder surgery because her doctor did not testify that the fall, more likely than not, caused the need for the surgery. No. CV 16-1727, 2017 WL 5908004, at *4 (W.D. La. Nov. 30, 2017). In that case, however, the doctor not only testified that the plaintiff was likely a candidate for left shoulder surgery before her fall, but also explicitly stated that the alleged fall did not likely cause the injuries that necessitated the surgery. Id. at *3. The court reasoned that "[j]uxtaposing [the doctor's] equivocal testimony with his unambiguous testimony that Plaintiff's alleged fall *did not*, more probably than not, cause the injuries that necessitated Plaintiff's surgery, it is clear that Plaintiff fails to sustain her burden." Id. at *4.

Both Bacon and Ford are clearly distinguishable from this case. The plaintiffs in Bacon and Ford were candidates for surgery prior to their accidents, unlike Mrs. Foster who was not an immediate candidate for neck surgery prior to the Walmart store incident. As will be discussed shortly, her neck condition had not even progressed to the point where imaging studies were necessary. Furthermore, unlike the Ford plaintiff, Dr. Dowd never testified that the Walmart store

6

incident did not, more probably than not, cause the injuries that necessitated her cervical surgery. Dr. Dowd's inability to state that the Walmart store incident, more likely than not, necessitated her surgery is one factor for the Court to consider, but not a dispositive one.

The Court must evaluate Ms. Foster's medical record as a whole in determining whether it is possible for her to show that the Walmart store incident likely caused the need for her cervical surgery. The following excerpt from Dr. Dowd's testimony sums up relevant parts of Ms. Foster's medical history:

> A    She described a progressive-neck pain as a result of her fall, and whether that -- and whether that has caused internal-structural changes or symptomatic aggravation of a disc, is difficult to determine.
>
> Q    Okay. Do you believe this disc bulge, at the C6-7 level, existed when Ms. Foster presented to you in July 2016, complaints of neck pain?
>
> A    I would say that we didn't have an MRI at that time.
>
> Q    Mm-hm. (Affirmative).
>
> A    **Our feeling was that if her neck pain progressed, we may get some imaging studies. It hadn't gotten to that.**
>
> Q    Okay.
>
> A    So I don't think that can be answered, directly. I would say the -- she was having a neck pain. **There was a difference in pattern of symptoms, however, to the extent that it was primarily of left side and did not radiate into the arms.**
> **Subsequent; what she described to me, as subsequent to her fall at the grocery store, is more right side and radiating into her right forearm. So I would say that the -- the symptoms at this time, were more right-side based and more had a flavor of a radiculopathy or a nerve irritation, to the extent they extended into the forearm.**
>
> Q    All right.
>
> A    **Which is different than what she had had during the 2016, evaluation.**
>
> Q    So, but you don't have an opinion when this bulge developed itself; is that correct?

A      I don't -- that's what I believe I said is I --

Q      Okay.

A      -- Can't state it specifically. I don't think it can be stated specifically, I mean.

Q      Okay.

A      And, so from a treating standpoint -

Q      Mm-hm. (Affirmative).

A      -- What we're trying to do, is identify a pattern of symptoms and determine if that relates to more of a neurologic origin. That can be related to the spine, in this case.

As of the visit of, I believe it was July 2016, it really was not a neurological sounding pattern of pain. Didn't radiate into the arms. So my feeling is likely a strain-type event. Perhaps irritated in the course of her treatment during her breast issue.

**Which is somewhat distinct from this in January 2017, where she has more of what sounds to be a radiculopathy-type pain radiating into the right arm, likely associated with the disc in her neck.**

**So I would say that her condition is more consistent with a nerve irritation as of January 2017, compared to what would -- mainly sounded more like a cervical strain as of July 2016.**[26]

There are two causation issues which the court must address: (1) whether the Walmart store incident, more probably than not, caused the injury which necessitated surgery; and, if so, (2) whether the pre-collision injury would have required surgery regardless of the collision. There is sufficient evidence for a finding that the Walmart store incident was likely the cause of Mrs. Foster's disc bulge at C6-7. An MRI taken after the Walmart store incident (but before the collision) showed a disc bulge at C6-7 for the first time, which Dr. Dowd testified was the underlying reason for the surgery. Moreover, the symptoms Mrs. Foster described in her July 2016 appointment with Dr. Dowd (prior to the Walmart store incident) were distinguishable from the symptoms she described after the alleged fall. Taken together, a jury could reasonably conclude

---

[26] Id. at 27-29 (emphasis added).

that, more likely than not, the Walmart store incident caused or aggravated the disc bulge at C6-7 which necessitated the cervical surgery.[27]

For Mrs. Foster to show that her pre-collision injury required surgery regardless of the collision, she would essentially have to prove that her condition after the fall but before the collision was fundamentally the same as her condition at the time Dr. Dowd ultimately determined she needed surgery.[28] It is undisputed that Mrs. Foster's cervical surgery was a result of the disc bulge at C6-7. In his deposition, Dr. Dowd testified that the pre-collision November 2016 MRI of the C6-7 disc bulge was substantively similar to a post-collision MRI of the C6-7 disc bulge.[29] He further explained that:

> "[s]he was found to have a disc protrusion at C6-7, causing persistent neck and right-arm pain in the form of a radiculopathy, stemming from that level." That's been -- "That developed after the fall that she reported to me from the Walmart incident, and ultimately, persisted up until surgery for which to correct the condition." "She was under consideration for treatment of her neck," which the hope at that time is that it would not require a surgery. But there -- well, with the understanding that her progress -- or continued and progress there. "Continued pain despite treatment ultimately required a surgery." Certainly she was involved in a forceful-motor-vehicle accident, during the course of her treatment from the fall, which I'm sure, aggravated her condition. But -- "Her cervical radiculopathy was present prior to motor" -- subsequent to the -- "Cervical radiculopathy was present from what appears to be chronologically relating to her fall, and ultimately persisted," needing for the treatment that -- surgery.[30]

---

[27] There is evidence to the contrary, including the fact that Mrs. Foster made no mention of neck pain at the ER on the day of the fall or to her primary physician a week later. Regardless, it is not appropriate for the Court to make such factual determinations in a motion for summary judgment. There is a genuine issue of fact as to whether the Walmart store incident caused or aggravated the disc bulge at C6-7 that ultimately required surgery.

[28] The Court notes that Mrs. Foster has a separate lawsuit pending regarding the collision. See Memo. in Support of Mot. for Partial Summary Judgment (46-2) at 2 n.1. Based on the above-mentioned case law and Mrs. Foster's position in this suit, that court could summarily deny any damages regarding the cervical surgery on the basis that she needed the cervical surgery before the collision because of the Walmart store incident. If the Court dismissed Mrs. Foster's claim for damages for the cervical surgery in this case because of the collision, she could be entirely precluded from recovering damages for the cervical surgery on the basis of conflicting theories of causation.

[29] See Dep. of Dr. Gregory Dowd (Doc. 46-4) at 50.

[30] Id. at 53-54.

Dr. Dowd's testimony shows that Mrs. Foster's subjective complaints of pain were a motivating factor in determining that surgery was necessary. Accordingly, Mrs. Foster's testimony, and potentially that of her husband, as to her symptoms before and after the Walmart store incident, through the collision, and up until the cervical surgery are highly relevant. See Urquhart, 224 So.3d at 1031 (finding that plaintiffs proved medical causation based in part on the testimony of family members and friends showing that plaintiffs sustained injuries as a result of the accident). Given the similar pre-collision and post-collision MRIs and potential testimony by Mrs. Foster and her husband, a jury could reasonably find that there is a 51% likelihood that she would have needed cervical surgery regardless of the collision. Thus, a genuine issue of material fact exists as to whether the Walmart store incident, more likely than not, caused the need for Mrs. Foster's cervical surgery.

### III. CONCLUSION

Based on the foregoing reasons, Walmart's motion must be **DENIED**. The Court will issue a judgment in conformity with these findings.

**SIGNED** on this 17th day of April, 2019, at Alexandria, Louisiana.

JUDGE DEE D. DRELL
UNITED STATES DISTRICT COURT